Exhibits to Affidavit of Peter L. Costas

A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE MORGANTI GROUP, INC. | ) | |
| and THEODORE CATINO | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiffs | ) | |
| | ) | **301CV574·PCD** |
| v. | ) | |
| | ) | |
| BANDALI F. DAHDAH | ) | APRIL 9, 2001 |
| ALEXICOLE, INC. | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

The Parties

1.      Plaintiff The Morganti Group, Inc., (hereinafter "Morganti") is a corporation organized and existing under the laws of the State of Connecticut and is located at 100 Mill Plain Road, Danbury, Connecticut 06811.

2.      Plaintiff Theodore Catino (hereinafter "Catino") is a citizen of the United States of America and resides at 287 Judd Road, Easton, Connecticut 06612.  He is currently Senior Vice President of Morganti.

3.      Defendant Bandali F. Dahdah (hereinafter "Dahdah") is a resident alien in the United States of America resides at 20 Cranberry Lane, Burlington, Massachusetts 01803. Upon information and belief, Dahdah is a resident alien who is a citizen of Jordan.

JAT/13626/26/521316v1
04/09/01-HRT/JAT

4.     Defendant Alexicole, Inc., (hereinafter "Alexicole") is a corporation organized and existing under the laws of the State of Delaware and is located at 20 Cranberry Lane, Burlington, Massachusetts 01803.  Upon information and belief Alexicole is owned and controlled by Dahdah.

Jurisdiction And Venue

5.     The present action arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* as amended by the Intellectual Property and Communications Omnibus Reform Act of 1999, Public Act 106-113; the Connecticut Trademark Act, Conn. Gen. Stat. 35-11a *et seq.;* the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110a *et seq.*; and the Connecticut common law.

6.     This Court has jurisdiction over the claims for violation of the federal trademark laws pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has pendent jurisdiction over the state law claims.  Venue is proper under 28 U.S.C. § 1391(b).

7.     This Court has personal jurisdiction over the Defendants pursuant to Conn. Gen. Stat. § 52-59(b) as to Dahdah and § 33-259(f) as to Alexicole.

Background

8.     Morganti was founded in the 1920's and is a major contractor engaged in the construction of buildings and other structures throughout the United States.  It has long enjoyed a reputation for quality construction and for being efficient and adaptive.  Morganti has had several and continues to have subsidiary or related companies, most of which include "Morganti" in their trade names and the MORGANTI trademark.

2

9.     Morganti is a wholly owned subsidiary of Consolidated Contractors Company (hereinafter "CCC") which has its headquarters in London, England and has construction projects in various countries.

10.    Morganti has registered the service mark "MORGANTI" in the United States Patent and Trademark Office for the construction, renovation and reconstruction of buildings, roads, airport runways, sewage treatment plants and parking facilities. That registration was granted on May 28, 1996 and is valid and in force. Attached hereto as Exhibit A is a copy of the registration of the trademark MORGANTI.

11.    The MORGANTI trademark and trade name are valuable and recognized widely by governmental bodies, companies and subcontractors throughout the United States, and there is valuable good will associated therewith.

12.    Morganti registered the domain name "MORGANTI.COM " on 15 January 1997 and registered the domain name "MORGANTITEXAS.COM " on 13 August 1998. Both domain registrations are current and in force. Attached hereto as Exhibits B and C are copies of the domain name registrations of "MORGANTI.COM " and "MORGANTITEXAS.COM ".

13.    Dahdah has repeated utilized threats of actions against Morganti in an effort to obtain moneys from Morganti.

14.    Dahdah has held various staff and supervisory positions since 1989 in Morganti and its subsidiary M.C. Gaughan Company and has on several occasions resigned and later been rehired by Morganti or a subsidiary. His most recent employment was terminated upon his resignation on June 10, 1996. During such employment, he has had or obtained access to confidential company information of Morganti and its subsidiaries.

3

15.    On a number of occasions Dahdah has brought court proceedings against Morganti and its subsidiaries based on various allegations.  Most recently, Dahdah instituted a proceeding against Morganti National, Inc., in the United States District Court for the District of Massachusetts, Civil Action No. 99-12613-RWZ.  This action was dismissed with prejudice.

16.    On May 15, 2000, Dahdah and/or Alexicole registered the domain name "MORGANTI.ORG".  Attached as Exhibit D is a copy of the domain name "MORGANTI.ORG".

17.    On March 17, 2001, Alexicole and/or Dahdah registered the domain name "MORGANTISUCKS.COM ".  Attached as Exhibit E is a copy of the domain name "MORGANTISUCKS.COM".

18.    Dahdah and Alexicole were aware of the MORGANTI trademark prior to registering the domain names MORGANTI.ORG  and MORGANTISUCKS.COM.

19.    Such domain name registrations were obtained for improper purposes, namely to defame Morganti and its officers and employees and to coerce Morganti into paying Dahdah moneys to terminate such activities.

20.    Morganti did not authorize or condone the registrations of the Morganti domain names by Dahdah and/or Alexicole.

21.    On March 13, 2001, Dahdah sent telefax communications to various offices of Morganti stating:  "We are pleased to announce that today we are launching a new web page.  Kindly check out www.morganti.org and provide us with your feedback.  Check back for frequent updates".

4

22.    This communication was on memorandum letterhead of Consolidated Contractors Company ("CCC"). A copy is appended hereto as Exhibit P.

23.    Dahdah has no present employment or business relationship with CCC or any other related company, and has never had any employment relationship with CCC.

24.    Dahdah and Alexicole have placed on the website statements which are defamatory and libelous of Catino and with the intent to injure the reputation of Catino and, through him, the reputation of Morganti. Attached hereto as Exhibit F are excerpts from the Dahdah/Alexicole website containing the statements referring to Catino.

25.    Upon information and belief, Dahdah and Alexicole knew that such statements were false, and such statements were made to cause Catino discomfort and concern that his reputation was being sullied by the widespread dissemination of such allegations on the Dahdah/Alexicole website.

26.    Dahdah and Alexicole have published on their website false and libelous statements relative to Morganti including allegations that it has engaged in criminal acts, namely fraud upon the United States government and other entities, bribery (in violation of federal and state laws), and tax evasion. Attached hereto as Exhibit G are excerpts from the Dahdah/Alexicole website setting forth such libelous statements.

27.    In addition to the specific statements of alleged criminality, the website has been replete with inferences concerning alleged wrongdoings of Morganti and its officers and employees. Attached hereto as Exhibit H are excepts from the website setting forth such statements.

5

28.    Upon information and belief, Dahdah and Alexicole knew that such statements were false, and such statements were made to cause Morganti and its officers concern that customers, prospective customers and contractors would be influenced by such false statements and jeopardize the Morganti operations and marketing efforts.

29.    Since Morganti became aware of the website, Dahdah and Alexicole have been changing the contents of their "publications" on the website as evidenced by the collection of homepages appended hereto as Exhibit I. The dates of the downloading are set forth at the lower right hand corner of the web page. In some instances, the home page has had a scrolling insert; the text of the insert is printed on a separate page attached to the home page.

30.    Dahdah and Alexicole are publishing on their website alleged communications from third parties which were allegedly received by E-mail (attached hereto as Exhibit J).

31.    Upon information and belief, the alleged third party communications are fictions of Dahdah intended to embarrass and defame Plaintiffs.

32.    Although Dahdah and Alexicole have indicated that their website provided a chat room beginning on or about April 2, 2001, there is no online access available to the chat room site as of April 4, 2001 as evidenced by Exhibit K attached hereto. Volano is a provider of chat room space for other parties.

33.    The website did not include any indication of a chat room on March 21, 2001 or March 30, 2001, as can be seen from the home pages in Exhibit L.

34.    Dahdah and Alexicole have taunted Morganti to take action against the  website and have planned to move their libelous activities to the MORGANTISUCKS.COM website. A copy of such statements made on the Dahdah/Alexicole website are appended hereto as Exhibit M.

35.    After Morganti became aware of the Dahdah/Alexicole website and the libelous statements thereon, Morganti contacted its attorneys who sent Dahdah a letter demanding that he cease and desist from such unlawful activities.  A copy of the letter is appended hereto as Exhibit N.

36.    Since the letter from Morganti's counsel, Dahdah/Alexicole have repeatedly changed the materials and statements on the website but have continued to publish libelous statements as to Plaintiffs.

37.    Upon information and belief, Dahdah's intent is to harass Morganti and its executives into paying him moneys to terminate the unlawful acts of which Plaintiffs herein complain.

38.    In addition to using the website to defame and libel Plaintiffs, Dahdah and Alexicole are also using it to promote and offer services relating to securities and investments. A copy of the relevant web pages from a printout on April 2, 2001 is appended hereto as Exhibit O.

39.    The registration of the MORGANTI.ORG and MORGANTISUCKS.COM domain names and use of the site(s) associated therewith constitute commercial activity using the trademark MORGANTI and present the potential for confusion and suggests association with Morganti.

7

40.    As a result of the aforesaid acts of Defendants, each of Plaintiffs has been injured and such actions and injury are likely to continue unless Defendants are enjoined by this Court.

## FIRST COUNT - TRADEMARK INFRINGEMENT

41.    Morganti repeats the allegations set forth in Paragraphs 1-40 as if fully set forth hereinafter.

42.    The use of the domain name MORGANTI.ORG is likely to produce confusion and deception, is likely to produce mistake as to source, affiliation or sponsorship as to any services offered for sale on the website, and is for an unlawful purpose as set forth hereinbefore.

43.    Such registration and usage of a domain name incorporating the trademark MORGANTI constitute an infringement of Morganti's rights in the mark MORGANTI in violation of 15 U.S.C. § 1114.

44.    Morganti has no adequate remedy at law.

45.    Morganti has suffered, and will continue to suffer, irreparable harm to its reputation and diminution of its good will unless Defendants are enjoined by this Court.

## SECOND COUNT - VIOLATION OF THE ANTI-CYBERSQUATTING ACT

46.    Morganti repeats the allegations of Paragraphs 1-40 of the Complaint as if fully set forth hereinafter.

8

47.    As amended by the Anticybersquatting Consumer AProtection Act, 15 U.S.C. § 1125 of the Trademark Act is amended by adding Paragraph (d) which, *inter alia*, provides civil liability of one who:

    (ii)    registers, traffics in, or uses a domain name that

        (I)    in the case of a mark that at the time of registration of the domain name, is identical, or confusingly similar to that mark;

        (II)    in the case of a famous mark that is famous at the time of registration of the domain name, is identical, or confusingly similar, to or dilutive of that mark.

48.    Dahdah and Alexicole have registered the domain names MORGANTI.ORG and MORGANTISUCKS.COM which incorporate Morganti's mark and trade name MORGANTI.

49.    Such registrations have been obtained with knowledge of Morganti's trademark rights and for an unlawful purpose as hereinbefore set forth.

50.    The activities of Dahdah and Alexicole constitute violations of the Anticybersquatting Consumer Protection Act.

51.    Morganti has suffered and will continue to suffer irreparable harm if Dahdah and Alexicole are not enjoined from the activities complained of and if they do not assign the domain name registrations of MORGANTI.ORG and MORGANTISUCKS.COM.

## THIRD COUNT - TRADEMARK DILUTION

52.    Morganti repeats the allegations set forth in Paragraphs 1-41 of this Complaint as if fully set forth hereinafter.

JAT/13626/26/521316v1
04/09/01-HRT/IAT

53.    The trademark MORGANTI is a famous mark by reason of the extensive use for more than 70 years.

54.    Defendants have willfully intended to trade upon the reputation of Morganti and to injure that reputation by the actions hereinbefore described.

55.    Defendants have willfully intended to cause dilution of the Morganti trademark and diminution of its value by the actions hereinbefore described.

56.    Such wrongful actions constitute dilution of a famous mark and are actionable pursuant to 15 U.S.C. § 1125(c).

## FOURTH COUNT - LIBEL AS TO MORGANTI

57.    Morganti repeats the allegations set forth in Paragraphs 1-38 of this Complaint as if fully set forth hereinafter.

58.    Defendants Dahdah and Alexicole are the operators of a website presently designated by the domain name *morganti.org* and publish thereon various statements which are published on the Internet to Connecticut where Morganti's headquarters are located, and to various other states, and where such materials will be read by employees, customers and prospective customers, sub-contractors and others doing business with Morganti.

59.    Defendants Dahdah and Alexicole, contriving and intending to injure Morganti and deprive it of the respect, confidence and esteem particularly essential to its operations in the construction field, and contriving and intending to deprive Morganti of its good name, reputation and the esteem of its customers, employees, prospective customers and sub-contractors, and to bring it into scandal, ridicule and disrepute before such persons, did

10

heretofore during the months of March and April 2001 as indicated in the attached Exhibit G

falsely and wrongly publish and circulate of and concerning Morganti the following false,

scandalous, defamatory and libelous statements and phrases:

- Defrauding the Government.

- Blue Plains Fraud.

- How we defrauded the Federal Government and taxpayers out of millions at

Blue Plains, Washington, D.C.

- After Job is finished (here more than three years) give subcontractor time and

material subcontract and keep it under $50,000 so that accounting can't track it.  Profit

and money, sign false T&M slips.  It's that easy.  Like stealing candy from a baby!!!

- Embezzlement at Morganti.pdf.

- Discrimination.

- Fraud.

- Bribery at Morganti.pdf.

- Welcome to the Recovery Fraud home page. Hello construction buddies.  The

purpose of this web page is to shut down the operations of Morganti as they are in the

business of defrauding the Federal Government out of millions of dollars and it is our

duty to protect the interest of this great country.

60.    The foregoing statements and phrases were made and intended to convey that

Morganti was and is guilty of criminal and inappropriate conduct in the performance of its

duties in the construction industry, and to hold Morganti in contempt in the eyes of its

customers, its employees, prospective customers and sub-contractors.

61.     By reason of the aforesaid publications in circulation in the State of Connecticut, the other states of the United States, and among the people thereof, Morganti has been greatly injured in its good name, fame and reputation in the conduct and execution of its business which it has previously enjoyed in the construction industry as aforesaid, in the sum of One Million Dollars ($1,000,000).

## FIFTH COUNT - LIBEL AS TO CATINO

62.     Catino repeats the allegations set forth in Paragraphs 1-38 of this Complaint as if fully set forth hereinafter.

63.     Defendants Dahdah and Alexicole are the operators of a website presently designated by the domain name *morganti.org* and publish thereon various statements which are published on the Internet to Connecticut where Morganti's headquarters and Catino are located, and to various other states, and where such materials will be read by employees, customers and prospective customers, sub-contractors and others doing business with Morganti and Catino.

64.     Defendants Dahdah and Alexicole, contriving and intending to injure Catino and deprive him of the respect, confidence and esteem particularly essential to his operations in the construction field, and contriving and intending to deprive Catino of his good name, reputation and the esteem of Morganti's customers, employees, prospective customers and sub-contractors, and to bring him into scandal, ridicule and disrepute before such persons, did

heretofore during the months of March and April 2001 as indicated in the attached Exhibit G falsely and wrongly publish and circulate of and concerning Catino the following false, scandalous, defamatory and libelous statements and phrases:

● My experience at Morganti was horrible. My main reason for leaving was that Mr. Catino used to always make fun of my breasts and I was really offended but I needed the work in this industry and so I let it slide. Thought about hiring a lawyer, but men are pigs in general and I just learned to live with it.

● My name is Ted "sexual harasser" Catino. I am the Senior Vice President of Morganti.

● Hi I'm Ted Catino, I was thinking of my wife, but I thought of her.pdf (followed by picture of naked woman)

● I worked for Morganti a while back. During this time I had to endure sexual harassment in the form of innuendoes, physical abuse (the pinching type), sexual comments and in the end termination. I followed all the steps. I expressed my discomfort to my boss, Ted Catino. I informed the HR manager. At which time my concerns were addressed. When the physical abuse started again I immediately informed the President of the company as he requested. Big mistake...The President and Ted Catino are good friends and as a result I was given the boot. Catino continues to enjoy his position as a power freak and I am out in the cold. Left to face the psychological turmoil on my own. Not to mention the end year bonus I lost out on. This perp will eventually strike again and the company will come to see him for what he really is...a liability.

65.    The foregoing statements and phrases were made and intended to convey that

Catino was and is guilty of criminal and inappropriate conduct in the performance of his duties

in the construction industry, and to hold him in contempt in the eyes of Morganti's customers,

its employees, prospective customers and sub-contractors.

66.    By reason of the aforesaid publications in circulation in the State of Connecticut,

the other states of the United States, and among the people thereof, Catino has been greatly

injured in its good name, fame and reputation in the conduct and execution of its business

which he has previously enjoyed in the construction industry as aforesaid, in the sum of One

Million Dollars ($1,000,000).

WHEREFORE, Morganti and Catino pray that this Court grant the following relief:

1.    A temporary retraining order, preliminary and permanent injunction precluding

Dahdah and Alexicole from using Morganti's mark and trade name MORGANTI in any

manner, and from conducting any activities on any website using the improperly registered

domain name MORGANTI.

2.    An order requiring Dahdah and Alexicole to transfer the registrations of the

domain names MORGANTI.ORG and MORGANTISUCKS.COM to Morganti.

3.    Damages in an amount yet undetermined.

4.    Enhanced damages as the result of the deliberate and willful acts of Dahdah and

Alexicole.

JAT/13626/26/521316v1
04/09/01-HRT/JAT

5.    Costs and reasonable attorneys' fees.

THE MORGANTI GROUP, INC.
THEODORE CATINO

By _____

Peter L. Costas ct04260
Louis R. Pepe ct04319
PEPE & HAZARD LLP
225 Asylum Street
Hartford, Connecticut 06103
(860) 241-2630

B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT F I L E D

May 17   9 29 AM '01

U.S. DISTRICT COURT
NEW HAVEN, CONN

| | | |
|---|---|---|
| THE MORGANTI GROUP, INC. and THEODORE CATINO | ) ) ) | CIVIL ACTION NO. 301CV574 (PCD) |
| Plaintiffs | ) ) | |
| v. | ) ) | |
| BANDALI F. DAHDAH ALEXICOLE, INC. | ) ) ) | MAY 17, 2001 |
| Defendants | ) ) | |

## PRELIMINARY INJUNCTION

This cause came to be heard on May 14, 2001 on Plaintiffs' Motion for a Preliminary Injunction. At that hearing, the Court considered the verified complaint, the affidavit and documents submitted in support of the motion and documents in opposition to it. The Court also heard the argument of counsel for Plaintiffs and the argument of Defendant Bandali F. Dahdah *pro se*.

After due deliberation, it appears to the Court that the Defendants Dahdah and Alexicole are actually engaged in, and will continue to commit the acts set forth below unless restrained by this Court, to the irreparable injury of Plaintiff, The Morganti Group, Inc. ("Morganti"). The Court has made its findings of fact and conclusions of law on this matter during oral argument on the Motion. Therefore,

IT IS ORDERED that Defendants, their agents, and employees, and all others acting in concert with them, are enjoined:

(1)    from using the mark "MORGANTI" (whether used alone or in combination with any other word or words) as a domain mane for any operational website;

(2)    from using the website with the domain name MORGANTI.ORG;

(3)    from activating and using the website with the domain name MORGANTISUCKS.COM;

(4)    from representing that Defendants have any connection with Morganti, or with its services, or that Defendants' services are in any way associated with or sponsored, authorized or approved by Morganti;

(5)    from trading upon and appropriating the goodwill and business reputation of Morganti by use of the MORGANTI trademark;

(6)    from inducing, encouraging, aiding, abetting or contributing to any of the aforementioned acts by others.

IT IS ALSO ORDERED that Defendants shall have until May 21, 2001, or three (3) days from the date of this Order, whichever is later, to discontinue the above acts.

IT IS FURTHER ORDERED that this Preliminary Injunction shall become of full force and effect at the time that Plaintiff Morganti post a Bond approved by the Clerk of this Court in the sum of Ten Thousand Dollars ($10,000).

2

This Preliminary Injunction shall remain in full force and effect until the final judgment in this action or until further order of the Court, whichever occurs first.

Dated: *May 17, 2001*

_____
UNITED STATES DISTRICT JUDGE

I hereby certify that
is a true copy of the
on file.   Date: 5/17/04
KEVIN F. ROWE
Clerk
By _____
Deputy Clerk

3

C

## SETTLEMENT AGREEMENT

THIS AGREEMENT, effective this 31st day of July 2001, by and between The Morganti Group, Inc. (hereinafter "Morganti") and Theodore Catino (hereinafter "Catino") as one party, and Bandali F. Dahdah (hereinafter "Dahdah") as the other party.

WHEREAS Dahdah has registered as domain names the marks "morganti.org", "morgantisucks.com", and "consolidatedcontractorssucks.com" and has published statements on one or more of the websites which allege criminal and other inappropriate conduct by Morganti and its related companies and which allege sexual harassment and misconduct by Catino and others;

WHEREAS Morganti and Catino have brought an action against Dahdah in the United States District Court for the District of Connecticut, Civil Action No. 301 CV575 (PCD), and the Court has preliminarily enjoined Dahdah from utilizing websites in which "morganti" appears in the domain name; and

WHEREAS the parties have engaged in limited discovery and Dahdah has represented that he has produced to Morganti's counsel all documents in his possession or control relating to the allegations which he has made on the websites and further

that he will deliver all copies of all Morganti documents which he has in his possession or under his control and eradicate from his computers all Morganti documents and files; and

WHEREAS the parties are desirous of terminating the dispute between them without protracted legal proceedings;

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    The parties will enter into the stipulation and consent judgment in the form appended hereto as Exhibit A or as may be modified by the Court.

2.    Dahdah will promptly deliver to Morganti's counsel all Morganti documents in his possession or control, and he will promptly delete all Morganti documents and computer files resident in any computer which he owns or over which he has control, and in any backup tapes or discs containing any such Morganti files or documents.  He will make available for inspection by Morganti counsel the hard drives of any such computers to ensure that all such documents have been eradicated.

3.    Dahdah will hereafter make no derogatory or defamatory statements concerning Morganti or its executives and owners, or any of the related and parent companies of Morganti including, but not limited to, Consolidated Contractors Company, and their executives and owners including, but not limited to, allegations of criminal conduct and sexual misconduct.

4.    Dahdah will hereafter make no statements alleging sexual harassment or misconduct by Catino or any other officers and directors of  Morganti and its related companies.

5.    The parties hereto hereby release each other from any and all claims which they may have one against the other on any grounds whatsoever, up to and through the date of this agreement.

6.    Dahdah will assign the registrations of the domain names "morganti.org" and "morgantisucks.com" to Morganti.

7.    Dahdah will assign to Consolidated Contractors Company the registration of the domain name "consolidatedcontractorssucks.com".

8.    This Agreement constitutes the entire understanding of the parties with respect to the subject matter.

9.    This Agreement shall be construed in accordance with the laws of the State of Connecticut.

10.  Dahdah acknowledges that he has been advised of the desirability of retaining legal counsel.  He has declined to do so and represents that he has an adequate understanding of the law, and fully understands the terms of our agreement and of the Stipulation and Consent Judgment.

11.  This Agreement will be binding upon the parties hereto, their heirs, representatives, successors and assigns,.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals as of the date first above written .


Witness:

_____
8/9/01
Date

THE MORGANTI GROUP, INC.

By _____
Nabil Takla
Its Executive Vice President


Witness:

_____
8/13/01
Date

_____
Theodore Catino


Witness:

_____
8/2/01
Date

_____
Bandali F. Dahdah

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THE MORGANTI GROUP, INC.       )
and THEODORE CATINO            )      CIVIL ACTION NO.
                               )      301CV574 (PCD)
            Plaintiffs         )
                               )
v.                             )
                               )
BANDALI F. DAHDAH              )
ALEXICOLE, INC.                )      July 31, 2001
                               )
            Defendants         )

## CONSENT JUDGMENT

This Court has previously entered a Preliminary Injunction
precluding Defendants from operating a website utilizing the
registered trademark and trade name "Morganti" as, or in, a domain
name.  The parties have previously stipulated to dismissal of
Alexicole, Inc. as a party defendant, and the parties have engaged
in discovery with respect to the issues set forth in the complaint.
Bandali F. Dahdah has and engaged in the further actions set forth
in the Stipulation for entry of this Consent Judgment.  As a
result, the parties have reached an agreement to dispose of all of
the claims of Plaintiffs by entry of Judgment in the form set forth
herebelow;

1.    This Court has jurisdiction over the subject matter of this action and of the parties.

2.    Defendant Bandali F. Dahdah admits that he has no documents which directly support the claims which he had published on the website using the domain name "morganti.com", and thereafter on the website using the domain name "consolidatedcontractors.sucks.com", namely, stating or inferring that Morganti and/or its executives have engaged in various unlawful acts, and that Theodore Catino has been the subject matter of one or more complaints alleging sexual misconduct or harassment of Morganti employees.

3.    Defendant Bandali F. Dahdah, and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from using the mark and trademark "MORGANTI" or any variations of that or any other trademark confusingly or deceptively similar to the trademark "MORGANTI" as a domain name for a website, or as a hyperlink, or in any other manner in connection with a website, or in the manufacture, production, labeling, advertising, promotion, offering for sale, display, distribution, solicitation, and sale of any goods or services manufactured or supplied by any entity other than Morganti.

4.    Bandali F. Dahdah will promptly transfer to The Morganti Group, Inc. title to the domain name registrations of "morganti.org" and "morgantisucks.com".

5.    Defendant Bandali F. Dahdah, and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from using the mark and trademarks "CONSOLIDATED CONTRACTORS COMPANY", or "CONSOLIDATED CONTRACTORS', or "CCC" or any variations of those or any other trademark or trade name confusingly or deceptively similar to the trade names and trademark "CONSOLIDATED CONTRACTORS", or CONSOLIDATED CONTRACTORS COMPANY', or "CCC" as a domain name for a website, or as a hyperlink, or in any other manner in connection with a website, or in the manufacture, production, labeling, advertising, promotion, offering for sale, display, distribution, solicitation, and sale of any goods or services manufactured or supplied by any entity other than Morganti.

6.    Bandali F. Dahdah will promptly transfer to Morganti's parent company Consolidated Contractors Company title to the domain name "consolidatedcontractorssucks.com".

7.    Defendant Bandali F. Dahdah and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from registering as domain names, and using for any commercial purpose, any other trade names or trademarks of The Morganti Group, Inc. and its parent and related companies and the names of the executives and owners of The Morganti Group, Inc. and its parent and related companies.

8.    Defendant Bandali F. Dahdah is hereby enjoined from publishing defamatory public statements about Morganti and its parent and related companies and their executives and owners including, but not limited to, statements attributing criminal and illegal activities to them.

9.    Defendant Bandali F. Dahdah shall promptly deliver to Morganti all copies of Morganti documents in his possession or control, and he will delete from any computer and backup copies of computer files in his possession or under his control any Morganti documents resident therein.    Bandali F. Dahdah shall also certify to Plaintiffs' counsel that all copies of Morganti documents have been delivered, and that all Morganti documents have been purged from any computers and backup copies of computer files, in his possession or controlled by him.

10.   The Preliminary Injunction entered by this court on May 17, 2001 is dissolved in view of the entry of the injunction set forth in Paragraph 3 above and effective on entry of this consent judgment.

11.   The bond posted by Plaintiffs on the Preliminary Injunction is released and discharged.

12.   Defendant Bandali F. Dahdah shall pay damages to Morganti in the amount of Ten Dollars ($10.00).

13.   Defendant Bandali F. Dahdah shall pay Theodore Catino damages in the amount of Ten Dollars ($10.00).

14.   Each party shall bear its own costs and attorney fees in this matter.

Plaintiff, The Morganti Group, Inc., consents to entry of this judgment:

Dated___8/9/01_____

                                    The Morganti Group, Inc.

                                    BY:_____
                                         Nabil Takla
                                         Executive Vice President

Plaintiff, Theodore Catino, consents to entry of this judgment.

Dated___8/13/01_____            _____
                                    Theodore Catino

Defendant, Bandali F. Dahdah, consents to entry of this judgment.

Dated _____8/ъ/01_____    _____
                                Bandali F. Dahdah

## ORDER

The Court having reviewed the Consent Judgment as presented to it by the parties finds that the Consent Judgment so presented is proper in form and is suitable and proper disposition of this action.  Therefore,

THEREFORE:

IT IS ORDERED that the Clerk of the Court enter the Consent Judgment in this matter pursuant to Rule 58 of the Federal Rules of Civil Procedure.

_____        _____
   Date                          United States District Judge

D

30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

THE MORGANTI GROUP, INC. )
and THEODORE CATINO )
) CIVIL ACTION NO.
) 301CV574 (PCD)
Plaintiffs )
)
v. )
)
)
BANDALI F. DAHDAH )
ALEXICOLE, INC. ) July 31, 2001
)
Defendants )

## CONSENT JUDGMENT

This Court has previously entered a Preliminary Injunction
precluding Defendants from operating a website utilizing the
registered trademark and trade name "Morganti" as, or in, a domain
name. The parties have previously stipulated to dismissal of
Alexicole, Inc. as a party defendant, and the parties have engaged
in discovery with respect to the issues set forth in the complaint.
Bandali F. Dahdah has and engaged in the further actions set forth
in the stipulation for entry of this Consent Judgment. As a
result, the parties have reached an agreement to dispose of all of
the claims of Plaintiffs by entry of Judgment in the form set forth
herebelow:

1. This Court has jurisdiction over the subject matter of this action and of the parties.

2. Defendant Bandali F. Dahdah admits that he has no documents which directly support the claims which he had published on the website using the domain name "morganti.com", and thereafter on the website using the domain name "consolidatedcontractors.sucks.com", namely, stating or inferring that Morganti and/or its executives have engaged in various unlawful acts, and that Theodore Catino has been the subject matter of one or more complaints alleging sexual misconduct or harassment of Morganti employees.

3. Defendant Bandali F. Dahdah, and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from using the mark and trademark "MORGANTI" or any variations of that or any other trademark confusingly or deceptively similar to the trademark "MORGANTI" as a domain name for a website, or as a hyperlink, or in any other manner in connection with a website, or in the manufacture, production, labeling, advertising, promotion, offering for sale, display, distribution, solicitation, and sale of any goods or services manufactured or supplied by any entity other than Morganti.

4.    Bandali F. Dahdah will promptly transfer to The Morganti Group, Inc. title to the domain name registrations of "morganti.org" and "morgantisucks.com".

5.    Defendant Bandali F. Dahdah, and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from using the mark and trademarks "CONSOLIDATED CONTRACTORS COMPANY", or "CONSOLIDATED CONTRACTORS'", or "CCC" or any variations of those or any other trademark or trade name confusingly or deceptively similar to the trade names and trademark "CONSOLIDATED CONTRACTORS", or CONSOLIDATED CONTRACTORS COMPANY', or "CCC" as a domain name for a website, or as a hyperlink, or in any other manner in connection with a website, or in the manufacture, production, labeling, advertising, promotion, offering for sale, display, distribution, solicitation, and sale of any goods or services manufactured or supplied by any entity other than Morganti.

6.    Bandali F. Dahdah will promptly transfer to Morganti's parent company Consolidated Contractors Company title to the domain name "consolidatedcontractorssucks.com".

7.    Defendant Bandali F. Dahdah and his agents, servants, employees, attorneys, and any and all persons in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, are permanently restrained and enjoined from registering as domain names, and using for any commercial purpose, any other trade names or trademarks of The Morganti Group, Inc. and its parent and related companies and the names of the executives and owners of The Morganti Group, Inc. and its parent and related companies.

8.    Defendant Bandali F. Dahdah is hereby enjoined from publishing defamatory public statements about Morganti and its parent and related companies and their executives and owners including, but not limited to, statements attributing criminal and illegal activities to them.

9.    Defendant Bandali F. Dahdah shall promptly deliver to Morganti all copies of Morganti documents in his possession or control, and he will delete from any computer and backup copies of computer files in his possession or under his control any Morganti documents resident therein.  Bandali F. Dahdah shall also certify to Plaintiffs' counsel that all copies of Morganti documents have been delivered, and that all Morganti documents have been purged from any computers and backup copies of computer files, in his possession or controlled by him.

10.   The Preliminary Injunction entered by this court on May 17, 2001 is dissolved in view of the entry of the injunction set forth in Paragraph 3 above and effective on entry of this consent judgment.

11.   The bond posted by Plaintiffs on the Preliminary Injunction is released and discharged.

12.   Defendant Bandali F. Dahdah shall pay damages to Morganti in the amount of Ten Dollars ($10.00).

13.   Defendant Bandali F. Dahdah shall pay Theodore Catino damages in the amount of Ten Dollars ($10.00).

14.   Each party shall bear its own costs and attorney fees in this matter.

Plaintiff, The Morganti Group, Inc., consents to entry of this judgment:

Dated ___8/9/01___

The Morganti Group, Inc.

BY: _____
    Nabil Takla
    Executive Vice President

Plaintiff, Theodore Catino, consents to entry of this judgment.

Dated ___8/13/0___

_____
Theodore Catino

Defendant, Bandali F. Dahdah, consents to entry of this judgment.

Dated _____8/6/01_____          _____
                                    Bandali F. Dahdah

## ORDER

The Court having reviewed the Consent Judgment as presented to it by the parties finds that the Consent Judgment so presented is proper in form and is suitable and proper disposition of this action.  Therefore,

THEREFORE:

IT IS ORDERED that the Clerk of the Court enter the Consent Judgment in this matter pursuant to Rule 58 of the Federal Rules of Civil Procedure.

_August 27. 2001_          _____
Date                        United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE MORGANTI GROUP, INC. and THEODORE CATINO | ) ) ) | CIVIL ACTION NO. 301CV574 (PCD) |
| Plaintiffs | ) ) | |
| v. | ) ) | |
| BANDALI F. DAHDAH ALEXICOLE, INC. | ) ) ) | July 31, 2001 |
| Defendants | ) ) | |

## STIPULATION FOR ENTRY OF CONSENT JUDGMENT

1.    Plaintiffs, The Morganti Group, Inc. and Theodore Catino, have timely filed and served a complaint in this action asserting claims against the defendants Bandali F. Dahdah and Alexicole, Inc., all as more fully appears in the amended complaint.

2.    Defendant Bandali F. Dahdah has entered an appearance pro se in this matter, and has waived any claim to lack of personal jurisdiction in this court.

3.    The Court has entered a preliminary injunction against Defendants precluding use of those websites identified by a domain name using the "Morganti" trademark and trade name.

4.    Defendant Bandali F. Dahdah has transferred title to the domain names "morganti.org" and "morgantisucks.com" to himself.

5.    The parties have stipulated to dismissal of the action as to Alexicole, Inc.

6.    Defendant Bandali F. Dahdah has transferred much of the contents of the "morganti.org" website to a new website using as the domain name "consolidatedcontractorssucks.com".  The trade name of the ultimate parent of The Morganti Group, Inc. is Consolidated Contractors Company.

7.    The parties hereto have conducted limited discovery and Defendant Bandali F. Dahdah has produced at his deposition copies of all documents relating to the claims asserted by him in the Morganti.org web pages (transferred to the "consolidatedcontractorssucks.com" web pages).

8.    Plaintiffs and Defendant Bandali F. Dahdah have agreed on a basis for settling the matters alleged in the complaint and for entering a judgment in this action.

9.    Accordingly, Plaintiffs by their undersigned counsel and the Defendant, hereby agree that the attached Consent Judgment be entered by the Court to dispose of the claims in the captioned action.

_____  8/1/01
        Bandali F. Dahdah

THE MORGANTI GROUP, INC.
Theodore Catino


By:   Peter L. Costas ct04260
       Louis R. Pepe ct04319
       PEPE & HAZARD LLP
       225 Asylum Street
       Hartford, Connecticut 06103
       (860) 241-2630

E

December 15, 2001

CCC Management
P.O. Box 61092
Amaroussion 15110
Athens, Greece

To Whom It May Concern:

I understand that you have contacted your Zionist American Lawyers regarding my new web page www.khourysucks.com. We will defy any judges' order to take down the web page and go to jail if we have to and then we will set up operation outside the USA to continue to fuck you all in the ass. As far as I am concerned you are all scum bags. This is to put you all on notice that any communications from any Khoury including Mr. Wail Khoury or any of his immediate family members will be considered as harassment and as such request that no contact via email or telephone take place with me, now or in the future. I will report any attempt at communication to the local authorities and file a federal lawsuit.

Additionally no Khoury or Sabbagh will ever be welcome in our house in Jordan. When my father dies, if I see any of you around, I will use any means available to me to eliminate your presence.

Bandali Dahdah

F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT        NEW HAVEN

_____ 9 _____ 20__
Kevin F. Rowe, Clerk

By P. G. Villand
Deputy Clerk

THE MORGANTI GROUP, INC.    )
and THEODORE CATINO         )    CIVIL ACTION NO.
                            )    301CV574 (PCD)
          Plaintiffs        )
                            )
v.                          )
                            )
BANDALI F. DAHDAH           )
ALEXICOLE, INC.             )    JANUARY 8, 2002
                            )
          Defendants        )

## MOTION TO FIND BANDALI F. DAHDAH TO BE IN CONTEMPT

Plaintiffs, The Morganti Group, Inc. ("Morganti") and Theodore Catino ("Catino")

hereby move this court for an entry of an order against Defendant Bandali F. Dahdah

("Dahdah"), and all agents or employees and all other persons acting in concert with Dahdah:

1.    Adjudging Dahdah (and any persons who may be acting in concert with him)

guilty of contempt of this Court.

2.    Prohibiting Dahdah from further use of the domain name "khourysucks" and

requiring the assignment of the domain name of "khourysucks" registration to Morganti or its

designee.

3.    Prohibiting Dahdah from other violations of this Court's judgment and order

entered August 27, 2001 under penalty of criminal contempt.

4.    Requiring Dahdah to pay damages for such contempt.

5.    Granting such other and further relief, including assessment of attorneys' fees

and costs, as the Court may deem just and proper.

PLC/13630/144/564792v1
01/08/02-HRT/JKP

The grounds for this motion are:

A.    Morganti and Catino initially brought the captioned action against Dahdah and the company, Alexicole, Inc. for, *inter alia*:

(i)    unlawfully registering Morganti as a domain name for a website, namely "morganti.com" and "morgantisucks.com;"

(ii)    stating or inferring that Morganti and/or its executives had engaged in various unlawful acts; and

(iii)    stating that Catino had been the subject of complaints alleging sexual misconduct or harassment of Morganti employees.

B.    On May 17, 2001 following a hearing, this Court entered a preliminary injunction prohibiting Dahdah from:

(i)    using the mark "morganti" as a domain name;

(ii)    using the website "morganti.org;"

(iii)    activating and using the website "morgantisucks.com;"

(iv)    representing that he (and Alexicole) had any connection with Morganti;

(v)    trading upon and appropriating the goodwill and business of Morganti;

(vi)    using hyperlinks to the web sites of Morganti and its affiliates and parent companies; and

(vii)    aiding and abetting the above acts by others.

C.    During the pendency of the action Dahdah registered the name of Morganti's parent, Consolidated Contractors, as the domain name "consolidatedcontractorsucks.com" and continued the activities previously included on the "morganti.org" website.

D.    Discovery taken of Dahdah established that he had no documents to substantiate the claims in A(ii) and A(iii) above.

E.    Following discovery by both parties, they entered into a settlement agreement, a copy of which is appended hereto as Exhibit A and stipulated to entry of the consent judgment which is appended hereto as **Exhibit B**, and which precluded Dahdah from, *inter alia*:

(i)    registering or using any domain name containing "Morganti," "Consolidated Contractors" and the names of owners and executives of Morganti and its parent and related companies (Paragraph 5); and

(ii)    from publishing defamatory statements attributing criminal and illegal activities to Morganti and the owners and executives of Morganti and its parent and related companies (Paragraph 8).

(iii)    from using "Consolidated Contractors", "Consolidated Contractors Company" or "ccc" as a hyperlink (Paragraph 5).

F.    On December 5, 2001, the domain name "khourysucks.com" was registered with Register.com. Upon information and belief, the real registrant is Dahdah who identified another person as the registrant.

G.    Khoury is the family name of one of the two owners of Consolidated Contractors Company, a parent company of Morganti.

H.    On the "khourysucks" website, there is a hyperlink to the Consolidated Contractors website, and there are statements suggesting wrongdoing by Consolidated Contractors and its officers and employees, and suggesting that a member of the Khoury family was involved in the Trade Center attack.

PLC/13630/144/564792v1
01/08/02-HRT/JKF

I.    Such activities violate the settlement agreement and consent judgment.

J.    Upon information and belief, Dahdah has engaged in such activities in an effort to coerce Morganti and its parent company, or an owner or executive thereof, to give him money to discontinue such activities.

In support of the Motion, Plaintiffs submit the affidavit of their Counsel, Peter L. Costas, and a memorandum of law.

Accordingly, Morganti and Catino respectfully request that this Court find such actions to be in contempt of the consent judgment and grant the relief requested above.

Dated: _Jan 8 2002_

THE MORGANTI GROUP, INC.
THEODORE CATINO

By: _____
Peter L. Costas  ct04260
Louis R. Pepe  ct04319
PEPE & HAZARD LLP
225 Asylum Street
Hartford, CT  06103
(860) 241-2630

4

*[Left margin handwritten annotation, rotated:]* This motion to renew is GRANTED. The denial of plaintiff's motion for contempt (doc. no. 31) is vacated. The motion is now GRANTED, in accordance with the stipulation (doc. no. 45) entered this same date. SO ORDERED.

Peter C. Dorsey, U.S. District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| THE MORGANTI GROUP, INC. | ) | |
| and THEODORE CATINO | ) | CIVIL ACTION NO. |
| | ) | 301CV574 (PCD) |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANDALI F. DAHDAH | ) | June 14, 2002 |
| ALEXICOLE, INC. | ) | |
| | ) | |
| Defendants | ) | |

RESUBMISSION OF MOTION TO FIND
BANDALI F. DAHDAH IN CONTEMPT

Plaintiffs, The Morganti Group, Inc., and Theodore Catino, hereby resubmit their

motion to find Bandali F. Dahdah in contempt of the Consent Judgment and Order entered by

this Court on August 27, 2001. The original motion was filed on January 9, 2002.

At the hearing on the motion on January 28, 2002, Defendant Bandali F. Dahdah set

forth his defense that he should not be held in contempt because of a mental disorder which he

contended incapacitated him from entering into a binding "agreement". As a result of the

discussions with the Court, Mr. Dahdah was to submit to a psychiatric examination on the

issue of his professed incapacity and to submit a formal motion to vacate the consent judgment.

In the meantime, Mr. Dahdah agreed to refrain from the conduct which had prompted the

motion.

Subsequently, Mr. Dahdah initially filed a motion to vacate the consent judgment and

submitted a report by his psychiatrist in support thereof. This motion was opposed by

Plaintiffs, and the Court denied the motion on May 21, 2002.

1

7/1/02

G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THE MORGANTI GROUP, INC. )
and THEODORE CATINO )          CIVIL ACTION NO.
)                              301CV574 (PCD)
Plaintiffs )
)
v. )
)
BANDALI F. DAHDAH )            June 14, 2002
ALEXICOLE, INC. )
)
Defendants )

CONSENT JUDGMENT

Plaintiffs having renewed their motion to find Bandali F. Dahdah in contempt and this

Court having denied the motion of Bandali F. Dahdah to vacate the consent judgment entered

by this Court on August 27, 2001, and Defendant Bandali F. Dahdah having admitted to the

acts complained of in Plaintiffs' motion and to their being in violation of this Court's original

consent judgment, and this Court having found Bandali F. Dahdah to be mentally competent to

enter into this supplemental consent judgment, and the parties having reached agreement to

dispose of the matters set forth in Plaintiffs' Motion as set forth in the Stipulation For Entry Of

Supplemental Consent Judgment; this Court finds and orders as follows:

1.      Defendant Bandali F. Dahdah has admitted, and this Court finds, that he has

engaged in actions complained of by Plaintiffs which clearly violate the terms of this Court's

consent judgment and order entered on August 27, 2001, namely the establishment of, and the

posting on, the *khourysucks.com* website, of scandalous, defamatory and deprecatory remarks

about officers, employees and owners of the Morganti and related companies, as well as the sending of other communications containing such remarks.

    2.    Defendant Bandali F. Dahdah will hereafter refrain from any actions which violate the terms of the original Consent Judgment and this Supplemental Consent Judgment.

    3.    Defendant will deactivate the *khourysucks* website and assign the registration of the domain name as directed by Plaintiffs.

    4.    Defendant will send personal letters of apology to each of the persons who received, or who were the targets of, scandalous, defamatory and deprecatory remarks by him.

SO ORDERED.

_July 1, 2002_
Date

_____
UNITED STATES DISTRICT JUDGE

FILED
Jul 2 10 52 AH '02
U.S. DISTRICT COURT
NEW HAVEN, CONN.

2



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

THE MORGANTI GROUP, INC.          )
and THEODORE CATINO               )          CIVIL ACTION NO.
                                  )          301CV574 (PCD)
                  Plaintiffs      )
                                  )
v.                                )
                                  )          June 14, 2002
                                  )
BANDALI F. DAHDAH                 )
ALEXICOLE, INC.                   )
                                  )
                  Defendants      )

STIPULATION FOR ENTRY OF
SUPPLEMENTAL CONSENT JUDGMENT

 Plaintiffs having renewed their motion to find Bandali F. Dahdah in contempt of this

Court's consent judgment dated August 27, 2001, and this Court having denied Defendant's

motion to vacate that consent judgment, and the parties hereto being desirous of resolving the

matters raised by Plaintiffs' motion without further hearings and expense and without the

imposition of any penalties upon Defendant for the conduct complained of, the parties agree

hereto as follows and stipulate to entry of a supplemental consent judgment and order in the

form attached hereto.

 1. Defendant expressly admits that he engaged in the acts complained of in

Plaintiffs' motion to find him in contempt and represents that he will cease making scandalous,

defamatory and deprecatory remarks with respect to Plaintiffs, the related and parent

companies of The Morganti Group, and the officers, directors, owners and employees of The

Morganti Group, Inc., and the related companies and parent companies, and the families of

such officers, employees and owners.

The stipulation is APPROVED. SO ORDERED.

Peter C. Dorsey, U.S. District Judge

7/1/02

JAS/13630/144/587623v1
06/14/02-HRT/

2.     Defendant admits that he understands fully the obligations and ramifications of violating the original consent judgment and order as well as the Supplemental Consent Judgment attached to this stipulation.

3.     Defendant has consulted with Dr. Fernando Rodriguez-Villa with respect to this stipulation and submits herewith a report that Defendant understands the nature and terms of, and the consequences of violation of, this stipulation and the original consent judgment and the supplemental consent judgment.

4.     Defendant will send personal letters of apology to each of the persons who received, or who were the targets of, scandalous, defamatory and deprecatory remarks by him.

5.     Plaintiffs hereby withdraw their demands for imposition of penalties upon Bandali F. Dahdah for his actions set forth in the motion to find him in contempt, and any related actions, through the date of this stipulation for entry of a supplemental consent judgment.

6.     Defendant will deactivate the *khourysucks* website and assign the registration of the domain name as directed by Plaintiffs.

THE MORGANTI GROUP, INC.
THEODORE CATINO


By _____
       Peter L. Costas ct04260
       Louis R. Pepe ct04319
       PEPE & HAZARD LLP
       225 Asylum Street
       Hartford, CT  06103
       (860) 241-2630

_____
          Date

_____6/10/02_____          _____
Date                                              BANDALI F. DAHDAH

JAS/13630/144/587623v1
06/06/02-HRT/

H

## COVENANT AND UNDERTAKING

THIS COVENANT AND UNDERTAKING, effective this 8th day of November, 2006,
is provided by ELIZABETH DAHDAH (hereinafter "DAHDAH"), and her agents, to WAEL
KHOURY (hereinafter "KHOURY" and PEACETIME LLC (hereinafter "PEACETIME").

WHEREAS Bandali Dahdah has previously entered into settlement agreements and
consent judgments relative to his actions which have at times been defamatory and
deprecatory of KHOURY, his family, and the business interests in which KHOURY has an
interest including The Morganti Group, Inc. and Consolidated Contractors Company, and
their owners, officers and employees; and

WHEREAS KHOURY is desirous of precluding any such activity by DAHDAH;

NOW THEREFORE, for good and valuable consideration, receipt of which is hereby
acknowledged, DAHDAH covenants and warrants as follows:

1.    DAHDAH will not use the marks and trade names "MORGANTI", "CCC",
"CONSOLIDATED CONTRACTORS", or the names of any of their shareholders, officers,
directors and employees in a domain name for a website, or as a hyperlink.

2.    DAHDAH will not use in any way the trade names and trademarks
"MORGANTI", or "CONSOLIDATED CONTRACTORS", or "CCC", or any variations of
those or any other trademarks and trade names confusingly or deceptively similar to the trade
names and trademarks "MORGANTI", "THE MORGANTI GROUP", "CONSOLIDATED
CONTRACTORS", or "CONSOLIDATED CONTRACTORS", or "CCC", in connection
with the manufacture, distribution, solicitation, and sale of any goods or services.

3.    DAHDAH will not register as a domain name or trademark or make any
public use of the family names of the officers and owners of The Morganti Group, Inc. and
Consolidated Contractors Company, including, but not limited to KHOURY and his family.

4.    DAHDAH will not publish in any way defamatory or derogatory public
statements about KHOURY, PEACETIME, MORGANTI GROUP, CONSOLIDATED

1

CONTRACTORS, and CCC, and their parent and related companies, and their executives and owners including, but not limited to, statements attributing criminal or fraudulent activities to them.

     5.     DAHDAH will not send any communications to officers, directors and employees of The Morganti Group, Inc., Consolidated Contractors Company and CCC, or to their customers and prospective customers, which in any way are insulting or demeaning of any or all of them.

     6.     DAHDAH covenants that she will not threaten The Morganti Group, Inc., Consolidated Contractors Company, or their owners, officers and directors, including but not limited to WAEL KHOURY.

     7.     This covenant and undertaking shall be construed in accordance with the laws of the State of Connecticut.

     8.     If any provision of this Covenant and Undertaking should be held unenforceable, the remaining provisions shall survive and be enforceable.

2

IN WITNESS WHEREOF, DAHDAH has executed this Agreement of her own free
will.

Witness:

_____

TODD C LIEB

_____
ELIZABETH DAHDAH

I

# Web page all about CCC and Khoury:

# www.hataf.blogspot.com

J

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

|SEARCH BLOG| | FLAG BLOG| Next Blog"

# All about Consolidated Contractors Company

In law, defamation is the communication of a statement that makes a false claim, expressly stated or implied to be factual, that may harm the reputation of an individual, business, product, group, government or nation. There is nothing in this blog that if false and meant to harm the reputatition of anyone. Period. What you read is nothing but the truth.

**TUESDAY, FEBRUARY 12, 2008**

## CCIC Assets will be posted in:

CCIC Assets in [                    ]

Posted by ED at 4:32 PM

0 comments

Posted by ED at 4:01 PM

@@@

## Attention CCC Lawyers

To Leboeuf Lamb Greene And Macrae Llp attorney working on the London CCC matter, make contact. You know how I can be reached.

0 comments

**MONDAY, FEBRUARY 11, 2008**

## CCC London Office that lost over $6,000,000 last year

**I Elizabeth D. am the author and writter of this blog and not my husband**

**ED**

View my complete profile

**Fahmi 1927-2007**



In memory of my Father

This will never stop until CCC pays for the brutal beating I suffered at the hands of the thug Issa Srouji and his myrmidon's who brutally beat me and nearly choked me to death at my father's funeral service after receiving confirmation that this thug was told to stay away

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

Posted by ED at 11:32 PM

0 comments



## Be sure to vote for what you want done with this blog

Click to the right for the survey. Your decision impact whether this blog goes or stays. You must post your name in any of the comments for your vote to count.

Posted by ED at 11:21 PM

0 comments

## Click on Comments

On any item, click on comments and let me know what you are thinking.

Posted by ED at 11:19 PM

0 comments

Coming 2/12/2008 Verifiable Assets of CCIC

from me and not attend. Even Taima Khoury shouted at him and told him he was told to stay away. Hundreds of witnesses to the event

CCC did not afford me the sanctity of a proper service for my father and they will pay for it by what I am now doing.

File a motion in court, jail me, I don't care. As soon as I am released, I will come right back and create another web page.

Have your lawyers go thru the web companies and take this page down. Like the brave Palestinian fighters, ten web pages will pop up with the same information. You are fighting a losing battle. I have all the time in the world to do this.

Go ahead and try me.

So help me God

## Blog Archive

**2008 (11)**

February (7)

CCIC Assets will be posted in:

Attention CCC Lawyers

CCC London Office that lost over $6,000,000 last y...

Be sure to vote for what you want done with this b

http://www.hataf.blogspot.com/

Posted by ED  at 11:18 PM

0 comments

## Consolidated Contractors Company U.K. lost over $6,000,000 in 2007

Click on image for larger picture



Click on Comments

Coming 2/12/2008 Verifiable
Assets of CCIC

Consolidated Contractors
Company U.K. lost over
$6...

▼ January (4)

▷ 2007 (23)

**Depending on your response, we
will keep this blog or not**

○  Keep Blog, It is informative
○  Keep Blog, Update Daily
○  Remove Blog
○  Keep Blog, Do not update

Vote    Show results

Votes so far: 1
Days left to vote: 96

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

2/12/2008

Page 5 of 43

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

# CONSOLIDATED CONTRACTORS INTERNATIONAL (UK) LIMITED

## Statement of directors' responsibilities in respect of the financial statements

http://www.hatat.blogspot.com/

### Independent auditors' report

http://www.hataf.blogspot.com/

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

SATURDAY, JANUARY 19, 2008

Posted by ED at 10:53 PM

0 comments

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

## CCC in trouble

DUBAI (Zawya Dow Jones)--Consolidated Contractors Co.Consolidated Contractors Co.

, an Athens-based Middle East construction company with revenue in 2006 of more than $4 billion, had part of its assets frozen by a U.K. court last month because of a Yemeni oil field dispute, according to legal documents seen by Zawya Dow Jones.

The documents show that a U.K. High Court ruled on Dec. 21 that the family-run company and its billionaire owners, Said Khoury and Hasib Sabbagh, have until Feb. 25 to pay more than $55 million owed to Palestinian entrepreneur Munib Masri.

The court also issued a freezing order over CCCCCC's interest in the Yemeni Masila oil field to force the company to comply with an earlier ruling in favor of Masri, represented by U.K. law firm Simmons & Simmons, in October on the oil field dispute, the documents show.

The case involves CCCCCC's U.K. oil and gas unit CCOG, Athens-based Consolidated Contractors International Co, and Masri, who signed an agreement in 1992 to share revenue from Yemen's Masila oil field, according to the documents.

Khoury declined to answer questions regarding the case from Zawya Dow Jones, referring questions to his legal counselor.

Lawyers representing Khoury didn't answer calls.

The court has appointed a court receiver to seek out and collect the debt owed to Masri, a Masri representative told Zawya Dow Jones.

Masila, one of Yemen's largest oil fields, is located in Yemen's tribal Hadhramaut region. Crude oil production at Masila began in 1993 and was above 130,000 barrels a day in 2005, according to the U.S. Energy Information Administration.

The concession, which at one point had reserves approaching 1 billion barrels of recoverable oil, is currently operated by Nexen IncNexen Inc., formerly operating as Canadian Occidental PetroleumCanadian Occidental Petroleum , and CCIC.

Masri, a former Jordanian cabinet minister, in November launched the Palestine Forum political group, which he intends to convert into a rival for Fatah and Hamas in the West Bank and Gaza, according to a report in the Israeli newspaper Haaretz.

Page 13 of 43

2/12/2008

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

According to CCCCCC's Web site, its roots stretch back to 1952 and it is the Middle East's largest contractor in revenue terms, with 105,000 staff.

"As an Arab concern, Consolidated Contractors GroupConsolidated Contractors Group believes that construction in the Middle East must be approached responsibly with the interests of these states at heart," its Web site states. "Our philosophy is that while we work in the Arab World to make a profit we should give in exchange something of lasting value to those communities."

Posted by ED  at 6:57 PM                                    0 comments

## More trouble for the Khourys

January 17, 2008

Palestinian Tycoons Squabble on West Bank

Two of the original financiers of the Palestinian movement, businessmen Munib Masri, head of the Palestinian Development and Investment Co (Padinco) and Said Khoury, Consolidated Contractors International Co (CCC) are engaged in an angry standoff that could in the long run have far-reaching economic consequences but also ramifications on the West Bank's political life.

No Holds Barred Fight. After a two-year court battle, Masri is poised to seize CCC's assets to obtain payment of a USD 52.1 million debt. The High Court in London, which handed down a finding in his favour in November, has just given CCC until Feb. 25 to present a detailed list of its assets valued at over USD 100,000. CCC and Masri were partners for 15 years on the Masila oil license in Yemen. It was CCC that offered 10% of its stake on the license to Masri in 1992. But in 2005 Masri filed suit in London against CCC on grounds the engineering

Page 14 of 43

2/12/2008

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

group had never paid it any dividends on production of the field in 15 years. CCC counters that Masri had failed to put up money corresponding to its share in financing the field's development. In its fight with Masri, who is represented by Simon Morgan from the Simmons & Simmons law firm, CCC can call on powerful allies for support. The group counts former British transport minister Stephen Byers on the board of one of its affiliates. CCC also has close connections with the business intelligence concern Menas Associates run by the MI6 veteran, Noel Brehony. A stakeholder in Menas, businessman Tarez Qassim, is close to Khoury, the chief executive of CCC. The engineering group is a partner of the British gas concerns BG and Centrica as well as of the U.S. group Bechtel and France's Suez company. For its part, Masri's Padinco counts Saudi prince Alwaleed Ben Talal Ben Abdulaziz among its minority shareholders.

A Political Affair. But business is only one dimension of the dispute pitting Khoury against Masri. The two were original financiers of the Palestine Liberation Organization (OLP) founded by Yasser Arafat. The scion of a Palestinian Greek Orthodox family from Jerusalem, Khoury chose to take refuge in Beirut where he co-founded CCC. But he and his family continued to back the PLO financially through various welfare organizations until the end of the 1980s and invested in the occupied territories, where they bought into, among other things, the Gaza Marine gas field. In gaining entry into the field, CCC worked closely with Mohammed Rashid which manages the interests of the Arafat family. CCC also employed Yasser Abbas, son of Arafat's successor, Mahmud Abbas, in its Qatar office for long years.

All about Consolidated Contractors Company

Khoury subsequently drew closer to Saudi Arabia and to Rafik Hariri's Oger group in that country, taking his distance from the PLO following Saddam Hussein's invasion of Kuwait, which Arafat publicly applauded. Following Khoury's withdrawal, Masri, who was born into a prominent merchant family in Nablus traditionally opposed to Arafat, closed ranks with the latter. Becoming one of the closest of Arafat's advisers in just a few years Masri also emerged as the leading businessman in the occupied territories. He controls Patel, which holds a 25 year concession on telecommunications on the West Bank, as well as the Palestine Real Estate Investment Co. and the National Electricity Co. which operates several private power stations. Masri's close ties with Intelligence Online: The Global Strategic Information Page 1 of 3 http://www.intelligenceonline.com/detail/detail_articles/p_detail.as p?DOC_I_ID=3693996... 1/19/2008 Arafat also helped him to make his mark elsewhere in the Middle East where he was often perceived, rightly or wrongly, as managing the PLO leader's private interests.

Arafat's Mediation. The links that Masri and Khoury had with Araráfat prevented the two from publicly airing their business rifts for years. The OLP founder even tried to mediate between them. His death led to the long-simmering dispute breaking into the open. Masri, who was among the few close friends who accompanied Arafat to the Paris hospital where he died on Nov. 11, 2004, filed suit against CCC only months later, in the spring of 2005. That move shattered his ties with the PLO. The businessmen has since gone on to found a new party, the Palestinian Forum.

http://www.hataf.blogspot.com/

2/12/2008

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

## Khoury's face threat of prison

http://business.timesonline.co.uk/tol/business/columnists/article317 6906.ece

From The Sunday Times

January 13, 2008

Prufrock: Oil sheikhs face threat of prison

Edited by Louise Armitstead

TWO of the Arab world's richest businessmen have run into more than a spot of legal bother. Before Christmas a High Court judge slapped a freezing order on interests in a Yemeni oilfield owned by companies controlled by Consolidated Contractors Company, a goliath in engineering and construction in the Middle East.

CCC is controlled by Said Khoury and Hasib Sabbagh, recently ranked the 12th and 16th richest Arab busi-nessmen and collectively worth a cool $10 billion. CCC does much business from London and is well connected - it has projects with BG Group and Centrica and counts former transport secretary Stephen Byers as a director of one of its UK subsidiaries.

The case has been grinding on for years and centres on a claim by Palestinian businessman Munib Masri he is owed $55m by CCC for his 10% cut of revenues from the Yemeni field.

But CCC, with revenues of $3.1 billion in 2006, and its minted founders are refusing to pay up. Masri won his breach-of-contract claim last October, and the court got tough by demanding that two CCC-controlled companies provide details of all assets worth more than $100,000 by February 25. If not, its directors, including Khoury and his two sons, but not Byers, could face jail for contempt of court. You might think this to be the killer blow, but the two companies are registered in Lebanon and are beyond the reach of English courts. Look forward to yet more legal shenanigans.

Posted by ED  at 6:42 PM                                              0 comments

## CCC forced to pay $52 million

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

House of Lords Reject Appeal in $52m Yemen Oilfield Concession Dispute

Monday, November 12, 2007

An appeal by oilfield and engineering giant Consolidated Contractors Oil & Gas Limited (CC (Oil & Gas)) and Consolidated Contractors International Company SAL (CCIC), subsidiaries of Consolidated Contractors Company

OilVoice House of Lords Reject Appeal in $52m Yemen Oilfield Concession Dispute Page 1 of 5

http://www.oilvoice.com/n/House_of_Lords_Reject_Appeal_in_52m_Yemen_Oilfield_Co.... 1/15/2008

(CCC) which operates out of Athens and London, founded by the Middle Eastern tycoons Said Khoury and Hasib Sabbagh, was rejected Thursday, 8th November 2007, by the House of Lords in a long running dispute over a Yemeni oilfield concession.

Today's ruling paves the way for a $52m award to Munib Masri, a Palestinian businessman who signed an agreement with CC (Oil & Gas) and CCIC in 1992. The agreement concerned the sharing of revenues from production in the Yemeni Masila oil field, which would net Mr Masri 10% of CC (Oil & Gas) and CCIC revenues.

The companies refused to pay the 10% and Mr Masri was forced to bring a claim for breach of contract. Mr Masri won his case and under two Orders from the English High Court (dated 15th June and 26th October 2007) CC (Oil & Gas) and CCIC were required to pay to Mr Masri US$ 52,118,241 in relation to amounts owed to him under the agreement signed in 1992.

In July 2006 CCIC and CC (Oil & Gas) appealed the judgment on liability. This was struck out by the Court of Appeal in June 2007 following the companies' failure to comply with the court's order requiring them to pay to Mr Masri US$30 million as an interim payment.

Page 18 of 43

Following the striking out of their appeal, CCIC and CC (Oil & Gas) appealed to the House of Lords to over-turn the decision on the basis of human rights arguments.

This final appeal was today rejected by the House of Lords (consisting of three Law Lords) who refused to grant permission to appeal on the basis that the appeal did not raise a point of general public importance.

The House of Lords also refused a separate application for permission to appeal made by CCIC and CC (Oil & Gas) in relation to another issue of contractual interpretation which affected the amount due to Mr Masri, worth in the region of US$ 20 million.

As a result of today's ruling, CCIC and CC (Oil & Gas) have no further right of appeal to any court, which opens the way for Mr Masri to commence enforcement proceedings against the assets of CCIC and CC (Oil & Gas) on a worldwide basis.

CCIC and CC (Oil & Gas) are already in contempt of the English court by failing to comply with the existing orders requiring the payment of amounts owing to Mr Masri and are in breach of court orders requiring them to pay in excess of £800,000 in costs to Mr Masri. Commenting on today's final ruling, Simon Morgan, a Partner at Simmons & Simmons, representing Mr Masri said:

"This ruling is the culmination of a protracted legal battle and we have had to overcome many obstacles raised by the other side. My client, Mr Masri, is pleased and relieved that this issue now seems to be finally settled and that he can now proceed to recover the monies that are rightfully owed to him."

Posted by ED at 6:40 PM                    0 comments

**F R I D A Y ,  N O V E M B E R  9 ,  2 0 0 7**

## Court Documents state that Sohail Sabbagh, CCC

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Board Member, has reduced capacity

Click on
image for
larger picture

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Posted by ED at 12:43 AM

0 comments

**T H U R S D A Y ,  N O V E M B E R  8 ,  2 0 0 7**

## Toroyan, A CCC advisor to the Board, accuses Said Khoury

Read below: Toroyan believed that Said Khoury had legally and otherwise wronged Delma Power.

Click on image for larger picture

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Posted by ED at 11:43 PM

0 comments

## Hamid H. Amin, Chief executive at CCC questioned about CCC involvement with Sept. 11 terrorist attack by Rense. See below link

http://www.rense.com/general24/why.htm

For Hamed H. Amin , chief executive Consolidated Contractors International:

What was exactly the purpose of CCI in Afghanistan since 1998?
Have you been in touch with any represantatives or executives of any of

these companies:
UNOCAL, Halliburton, Carlyle, BinLadin Group Inc., Afghan
Development
Company, Barclays Bank, Telephone Systems International (TSI), SG
Asia
Project Finance, Northrop Grunman, ISI, CIA, Caspian Pipeline
Consortium
(CPC), Bristol-Myers Squibb, Americans for Affordable Electricity
(ENRON is
member)?

Have you been in touch with any represantatives of Barclays Bank?

Posted by ED at 10:01 PM

0 comments

## Wail Khoury on Board of Directors of Interaudi Bank

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Click on image for larger picture

http://www.bankaudiusa.com/secondary.asp?pageID=18

Posted by ED  at 4:50 PM

0 comments

Bank Link: http://www.a udi.com.lb/

## Said Khoury is an advisor to Audi Bank Board

Click on image for larger picture





Posted by ED  at 4:46 PM

0 comments

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company



Said Khoury, President of CCC, worth $6 Billion



Click on
image for
larger picture

## CCC worker crushed to death in Zambia after night shift

A GENERAL worker for Consolidated Contractors (CC), the company constructing Kalabo-Mongu road, was crushed to death on Good Friday.

http://www.times.co.zm/news/viewnews.cgi?
category=10&id=1050953051

Posted by ED at 9:39 PM

0 comments

## CCC workers shout, "No Money, No Road"

Click on Image for larger picture. You can see the caption, "No money, no Road"



Posted by ED at 9:56 PM

0 comments

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

http://www.belgrafix.com/gtoday/2005news/Nov/Nov05/No-Money-No-Road.htm

Posted by ED  at 5:32 AM                    0 comments

## More news about CCC workers at strike in Bahrian due to deplorable living conditions

Middle East

Workers in Bahrain strike for compensation

Almost 2000 workers in Manama, Bahrain, refused to work in protest against poor living conditions and pay structure on April 19.

A total of 1,489 Indians, 218 Pakistanis, 109 Filipinos, 97 Nepalis and four Bangladeshis, working for the Consolidated Contractors Company

2/12/2008

(CCC), a subcontractor working on a project for the Bahrain Petroleum Company (BAPCO), protested against poor living conditions and the lack of "risk allowance" for working in a "high-risk environment."

The workers presented a list of 13 demands to the management when they began their protests on Monday. Officials from four embassies--India, Pakistan, the Philippines and Bangladesh--have reportedly left the company's labour camp without striking any deal between the workers and the company's management.

The embassy officials said that the CCC management had agreed to a 5 percent salary increase, overtime and improvement of lodgings and facilities, among others, but the workers wanted the company to meet all their demands.

The dispute began when one of the employees, Indian national Asghar Ali, refused to be moved to another work site in Qatar.

Among the more serious issues the workers have raised is that when a worker completes his contract and wants to return, the company asks for a payment towards "costs" and the worker has to pay for his own ticket. This becomes a financial burden on every worker and it also violates the Bahrain Labour Law, the workers say.

Posted by ED at 5:21 AM    0 comments

## Wage increase problems with CCC workers in Grenada

Wage increase dispute with CCC workers involved in road construction projects in Grenada

Link below

http://www.belgrafix.com/gtoday/2005news/Oct/Oct%2001/Denial%20from%20TUC.htm

Posted by ED at 5:16 AM    0 comments

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

## Azerbaijan oil workers protest against unfair workplace practices by CCC

Oil pipeline workers protest in Azerbaijan and Georgia
On February 28, some 400 workers employed by Greece-based Consolidated Contractors International Co. participated in industrial action in the Kurdamir District of Azerbaijan. The building workers are involved in the construction of the Baku-Tbilisi-Ceyhan pipeline and are employed in both Azerbaijan and Georgia.
The workers are protesting that companies involved in the pipeline construction are engaging in unfair workplace practices. The Georgian Trade Union Amalgamation (GTUA) says that workers have to work seven-day weeks, 12 hours or more per day in order to earn "minimum subsistence salary" and that they can be fired at will without compensation.

Link here: http://www.wsws.org/articles/2004/mar2004/labo-m05.shtml

Posted by ED  at 5:07 AM                                    0 comments

## CCC accused in major delays with BP

The report follows tests on the pipeline, which Consolidated Contractors International Company (CCIC) commissioned as part of the multimillionpound claim it is bringing against BP. The British construction giant Amec is also suing the oil company.
The claim centres on who is responsible for delays following the cracking of a vital anti corrosion coating used to protect 60,000 pipeline joints. The cracks occurred within months of construction starting in August 2003.
BP blames the contractors for poor application of the coating. CCIC and Amec claim BP forced them to use a coating with no track record, despite warnings

Page 29 of 43

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

from its own experts that
the pipeline would rapidly corrode.
Unless the claim is settled soon, the case is heading for an
international arbitration tribunal in
London.

Lord Browne, BP's chief executive, has known about the coating
failure since last year when
Derek Mortimore, a pipeline consultant sacked from the BTC project
for speaking out,
alerted him to the financial risks.

"BP is burying thousands of environmental time bombs," Mortimore
told The Sunday
Times. "This is engineering of the madhouse."

A BP spokesman said: "The pipeline construction, operation,
inspection and testing
procedures are carried out rigorously to the highest industry
standards.

"We are happy with the pipeline coating and as far as we are
concerned (its) integrity is not
in question."

Page 17

http://www.timesonline.co.uk/article/0,,2095157205,00.html

Posted by ED at 4:56 AM                    0 comments

## Major Labor Problems w/ CCC in the United Arab Emirates. A story of CCC employees suffering from very bad working conditions. 15000 workers stop work

In spite of draconian labour laws workers in United Arab Emirates are
on strike

By our correspondent
Wednesday, 18 July 2007

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

According to its own declared statements, the Consolidated Construction International Company (CCIC) "has become the largest engineering and construction company in the Middle East" with over 69,000 workers from over sixty countries. But now something has happened in the United Arab Emirates to disturb the glossy image the company likes to portray of itself. Their workers in the UAE have come out on strike for their demands.

The workers of the UAE suffer from very bad working condition but because of the laws governing trade unions and the right to strike movements or strikes have been rare, although in the recent period the phenomenon has been growing. The country is undergoing a massive construction boom, but most of the 700,000 construction workers in the country are from countries such as India, Pakistan and Bangladesh. In fact migrant workers, who make up 95 percent of the country's workforce, are particularly at risk of abuse. These workers have been forced to emigrate from their countries to earn a living. Nearly 15,000 workers have now stopped work on two sites, Abshan and Rewait in Abu Dhabi. The police and the army have taken control of these two sites. Helicopters are hovering over the sites to check the activities of the workers. No newspaper or channel is reporting anything about this strike.

The labour laws in the UAE are brutal and draconian: any worker who is involved in activities like this can be sacked. A new proposed labour law contains no right to organize or to bargain collectively and it explicitly punishes striking workers.

The demands of the CCIC workers in Abu Dhabi are:

1. an increase in wages;
2. the right to strike;
3. medical allowances;
4. vacation after one year and the TA/DA;
5. improvement in the residential and food facilities;
6. Desert allowances and Gas allowances must be paid to the workers;
7. the weekly one day holiday on Friday must be counted as a working day as per international labour laws.

Solidarity messages and protest letters to the UAE authorities concerning these workers are needed as it is sure that the government

http://www.hatat.blogspot.com/

All about Consolidated Contractors Company

and the administration of the company will kill this strike and no one will report on it. Here we provide a Model Letter and some addresses, fax numbers and email addresses that you can use.

Model Letter

To Consolidated Construction International Company (CCIC)

We have been informed of a strike in two sites of the Consolidated Construction International Company (CCIC)in the United Arab Emirates, Abshan and Rewait in Abu Dhabi involving 15,000 of your employees. We are extremely concerned about the fate of these workers. They are merely struggling for basic trade union rights which are not recognized in the UAE. We ask you to meet the workers' demands and to refrain from any acts of victimization such as sacking the workers concerned. We are taking this question up in our country and explaining what is happening as widely as possible in our trade union movement.

Yours,

Posted by ED   at 4:19 AM                                    0 comments

## Over 2,000 workers stop work on CCC project in Bahrain because of poor living conditions provided by CCC

Over 2,000 employees of a contracting company, mostly Indians, have stopped work protesting poor living conditions and lack of an allowance for working in a high-risk work environment in the Bahraini firm.

Of the 2,000 workers, 1,489 were Indians and rest were Pakistanis, Bangladeshis, Nepalis and Filipinos.

Embassy officials of the four countries met the workers and the management of the Consolidated Contractors Company (CCC) to iron out a solution to the problem.

Link to Article here:

http://www.tribuneindia.com/2006/20060419/world.htm#1

## CCC accused of "shoddy" construction in Zambia

One does not need to be an expert to see that the work on the Mongu/Kalabo Road is shoddy. This writer toured the road which has raised dust in Mongu and Kalabo.
The Kuwait Consolidated Contractors Company (KCC) which is working on the road is being funded by several stakeholders like the Kuwait Fund Corporation, the Arab Economic Development, the Arab Bank for Development in Africa and OPEC Fund for International Development

Posted by ED at 4:09 AM                    0 comments

Read full article below

http://www.times.co.zm/news/viewnews.cgi?category=8&id=1098412497

Posted by ED at 3:49 AM                    0 comments

## U.S.A. business partner in Delma says Kevork Toryan and Wail Khoury involved in Conversion among other charges.

conversion:
a civil wrong
(tort) in
which one
converts
another's
property to
his/her own
use, which is
a fancy way

of

saying "steals." Conversion includes treating another's goods as one's own, holding onto such property which accidentally comes into the convertor's (taker's) hands, or purposely giving the impression the assets belong to him/her. This gives the true owner the right to sue for his/her own property or the value and loss of use of it, as well as going to law enforcement authorities since conversion usually includes the crime of theft.

http://www.hataf.blogspot.com/

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Click on image for larger picture
From the law dictionary definition of conversion:



http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

conversion: a civil wrong (tort) in which one converts another's property to his/her own use, which is a fancy way of saying "steals." Conversion includes treating another's goods as one's own, holding onto such property which accidentally comes into the convertor's (taker's) hands, or purposely giving the impression the assets belong to him/her. This gives the true owner the right to sue for his/her own property or the value and loss of use of it, as well as going to law enforcement authorities since conversion usually includes the crime of theft.

Posted by ED  at 3:23 AM                    0 comments

**British Judge says that Mr. Said Khoury is an "unsatisfactory witness"**

Click image to enlarge

2/12/2008

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

## Wail Khoury being sued in U.S.A. court in New York City

Posted by ED    at 3:16 AM    0 comments

Click on image for larger picture. Full lawsuit to be published shortly.

This is all a matter of public record.

http://www.hataf.blogspot.com/



## For the record

There is nothing on this blog that can be construed as defamation

Posted by ED   at 2:48 AM                 0 comments

In law, defamation is the communication of a statement that makes a false claim, expressly stated or implied to be factual, that may harm the reputation of an individual, business, product, group, government or nation.

There is nothing in this blog that if false and meant to harm the reputatition of anyone. Period.

All about Consolidated Contractors Company

What you read is nothing but the truth.

Posted by ED at 1:53 AM                0 comments

## Despite State Department trying to curtail work in Iran,

See article below regarding State Department policy towards Iran

CCC continues a very healthy relationship with Iran completing a project in the energy sector as late as January 07. Yet CCC continues its construction arm in the USA thru Morganti www.morganti.com building airports, schools, etc. here in the USA.

Here is the link to see CCC's work in Iran:

http://www.cccunderwaterengineering.com/experience.html

Click under 5 years list and List of Clients to see the tremendous work in Iran

Posted by ED at 1:38 AM                0 comments

## State Department trying to curtail work in Iran

Here is the link:

http://www.state.gov/p/us/rm/2007/82033.htm

ENERGY SECTOR In recent weeks, we have vigorously engaged relevant companies and countries at senior levels about potential investments in Iran's oil and gas sector. In making clear our opposition to such deals, we have emphasized the negative impact they could

have on international efforts to resolve the nuclear issue, as well as the potential implications under our law. Most of these deals remain in the discussion and negotiation stage. Our approaches are intended to diminish the likelihood of seeing them finalized. More broadly, Iran continues to encounter great difficulties in attracting foreign investment to its hydrocarbon sector and few foreign companies in recent years have committed to developing Iranian oil and gas fields. Some earlier agreements, notably one for developing the Azadegan oilfield, have come apart. Iran's own behavior and policies have contributed to this situation, but ILSA/ISA has also been a part of the negative investment climate that prevails for Iran today

Posted by ED at 1:37 AM          0 comments

TUESDAY, NOVEMBER 6, 2007

## To read full text of lawsuit click link below

http://www.bailii.org/ew/cases/EWHC/Comm/2006/1931.html

Posted by ED at 2:49 PM          0 comments

## British Lawsuit against CCC

Click on image to enlarge

c) If so, whether Mr. Hann is now entitled to an order for specific performance of the obligation which the Defendants assert CCIC owed to procure that CC (Oil & Gas) would assume "CCIC" obligation under the 1992 Agreement;

will it, on the true construction of the 1992 Agreement, Mr. Hann's entitlements were limited to 10% of the defined oil and cost recovery entitlements of CCIC, unless the Defendants are excepted from so alleging;

In relation, on the true construction of the 1992 Agreement, Mr. Hann had any entitlement to a 10% share of operating costs recovery.

10. In accordance with paragraph 14 of Consolidated's Order dated 17 May 2005, it was decided not to deal with any quantum issue, and it is apparent to me that I should not resolve any quantum/valuation issues arising from the Court's decision as to the identity of the relevant CCC contracting party. Accordingly, save in relation to one discrete point, which I refer to below, issue v) does not arise for determination.

## Credibility of witnesses

11. There was a considerable conflict of evidence between the two principal witnesses, Mr. Khoury and Mr. Hann, on many of the key factual issues. Unfortunately, both were seeking to put each other and their personal position in a less favorable light.

http://www.hataf.blogspot.com/

All about Consolidated Contractors Company

Posted by ED   at 2:42 PM

0 comments