# Officer's Return

**Middlesex, ss.**  *February 16, 2008*

---

I, this day, served the within notice by delivering in hand to the within named:

**Bandali F. Dahdah**

a true and attested copy of the same.

Said service was made at 1 Mulberry Lane, in said Burlington, Middlesex County, Massachusetts.

Scott A. Kingsley
Constable
Post Office Box 760821
Melrose, MA. 02176
(781) 665-7654



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE MORGANTI GROUP, INC. <br> and THEODORE CATINO | ) <br> ) <br> ) | CIVIL ACTION NO. <br> 301CV574 (PCD) |
| Plaintiffs | ) <br> ) | |
| v. | ) <br> ) | |
| BANDALI F. DAHDAH <br> ALEXICOLE, INC. | ) <br> ) <br> ) | FEBRUARY 15, 2008 |
| Defendants | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO FIND BANDALI F. DAHDAH TO BE IN CONTEMPT

### INTRODUCTION

Plaintiff, The Morganti Group, Inc. ("Morganti"), hereby moves this Court for an entry of order against Defendant, Bandali F. Dahdah ("Dahdah"), finding him, to have engaged in activities which violate this Court's judgments entered August 21, 2001 and July 1, 2002.

Morganti and Catino initially commenced the captioned action against Defendants Dahdah and Alexicole, Inc. ("Alexicole") for, *inter alia*: (1) unlawfully registering Morganti as a domain name for their websites, "morganti.com" and "morgantisucks.com;" and (2) stating or inferring that Morganti and/or its executives had engaged in various unlawful acts.

On May 17, 2001, following a hearing, this Court entered a preliminary injunction against Dahdah prohibiting him from:

(1)   using the mark "morganti" as a domain name;

(2)   using the website "morganti.org;"

(3) activating and using the website "morgantisucks.com;"

(4) representing that he and Alexicole had any connection with Morganti;

(5) trading upon and appropriating the goodwill and business of Morganti; and

(6) aiding and abetting the above acts by others.

While that action was pending, Dahdah registered the name of Morganti's parent, Consolidated Contractors, the domain name "consolidatedcontractorsucks.com". After entry of the preliminary injunction, he used this site to continue the misconduct previously on the "morganti.org" website. Following a period of discovery, the parties entered into a settlement agreement and stipulated to entry of a consent judgment.

The settlement agreement and original consent judgment precluded Dahdah from, *inter alia*:

(1) registering or using any domain name containing "Morganti," "Consolidated Contractors" and any other names of related or parent companies, and the names of owners or executives of Morganti and its parent and related companies;

(2) from publishing defamatory statements attributing criminal and illegal activities to Morganti and the owners and executives of Morganti and its parent and related companies; and

(3) from using "Consolidated Contractors," "Consolidated Contractors Company," or "ccc" as hyperlinks.

In December 2001, Morganti learned of activity because Dahdah has violated the settlement agreement and consent judgments in an effort to coerce Morganti and

Consolidated Contractors, or an owner thereof, to give him money to discontinue such activities, an order of contempt is necessary and the sanctions should be tailored to discourage Dahdah from repeated prohibited conduct.

In December 2001 Morganti learned of activities of Dahdah in violation of the injunction in this Courts consent judgment. Morganti then filed a motion for contempt. Ultimately, the parties stipulated to entry of a supplemental consent judgment which was entered July 1, 2002. In the stipulation Dahdah admitted that the had engaged in the acts complained of and represented that he would cease making scandalous, defamatory and depreciatory remarks with respect to Morganti and its related companies and its owners and their families.

On or about February 10, 2008, Dahdah telefaxed to various offices of Morganti, a communication reading "www.hataf.blogspot.com". The website to which the recipient is directed is a "blog" which apparently reproduces articles relating to Consolidated Contracts and its related companies with headers or captions which frequently appear to present CCC in an unfavorable light.

## THE BLOG

Although the blog is ostensibly intended to state, as described by Mr. Dahdah at the top of its home page, "nothing but the truth" so as not to defame Consolidated Contractors Company ("CCC") and various people associated therewith, at a minimum it certainly appears, in a variety of instances, to run afoul of Mr. Dahdah's legal obligations as set forth within the consent judgments and settlement agreement. A few illustrative examples are discussed below.

Mr. Dahdah is expressly prohibited from, among other things, using CCC and its various trade and other related names, "as a hyperlink, or in any other manner in connection with a website ..." *See, e.g.*, Consent Judgment, dated July 31, 2001. In direct violation of this prohibition, the subject blog uses CCC in its various and related trade names in numerous hyperlinks throughout and, of course, repeatedly references and uses such names "in connection with a website" – namely, as the sole focus of the subject blog.

To understand the various other ways by which the blog infringes upon the above-mentioned instruments, it is first necessary to examine the operative provisions within them that may have been violated. For example, ¶8 of the Consent Judgment dated July 31, 2001 enjoins Mr. Dahdah "from publishing defamatory public statements about Morganti and its parent and related companies [e.g., including CCC] and their executives and owners including, but not limited to, statements attributing criminal and illegal activities to them." The Settlement Agreement dated July 31, 2001 contains substantially identical language, and also makes clear in ¶3 that Mr. Dahdah "will hereafter make no derogatory or defamatory statements concerning Morganti or its executives and owners, or any of the related and parent companies of Morganti including, but not limited to, Consolidated Contractors Company, and their executives and owners including, but not limited to, allegations of criminal conduct and sexual misconduct." Similarly, ¶1 of the Stipulation for Entry of Supplemental Consent Judgment dated June 14, 2002 (Dorsey, J.) memorializes Mr. Dahdah's express admission that he acted in violation of the Court's Consent Judgment dated August 27, 2001 and that Mr. Dahdah "represents that he will cease making scandalous, defamatory and deprecatory remarks with respect to Plaintiff [The Morganti Group, Inc.], the related and parent companies of The

Morganti Group, and the officers, directors, owners and employees of The Morganti Group, Inc. and the related companies and parent companies, and the families of such officers, employees and owners."

With its threatening and vitriolic content and tone, the column on the right side of the blog appears to run afoul of the various restrictions imposed upon Mr. Dahdah by the aforementioned instruments. But the various blog entries located on the left column, though ostensibly "factual," likely also do so.

The left column purports to reproduce and link to what appear to be various news articles pertaining to CCC and related entities and persons. All of these portray CCC and its various, related entities and persons in a negative light (whether truthful or not), relating to, among other things, numerous legal and other disputes, potential involvement with September 11 terrorist attacks, CCC workers injured on the job, and other such matters. These "articles," whether or not defamatory, are arguably "scandalous," "derogatory," and "deprecatory," and suggest, if not "attribut[e] criminal and illegal activities to CCC and its related entities and persons.

To the extent that reproducing these sources from elsewhere in the subject blog do not violate the various instruments and provisions described above, the various subheadings/titles that introduce each item, particularly when read in context with the accompanying blog entries, are likely violative of such instruments. Indeed, these subheadings/titles seek to characterize and suggest to the reader what should be taken from each item, using language such as "CCC in trouble," "more trouble for the Khourys," "Khoury's [sic] face threat of prison," "CCC workers strike in Bahrian [sic] due to deplorable living conditions," "CCC employees suffering

from very bad working conditions," "Hamidh Amin, Chief Executive at CCC questioned about CCC involvement with September 11 terrorist attack," and so on. Presumably, these subheadings/titles were prepared by Mr. Dahdah.

The blog "reports" that CCC was responsible for an assault upon Dahdah at his father's funeral. It uses "CCC" as a hyperlink and last.

Seeking to characterize the contents of the sources included in the blog, in addition to reproducing those sources, most likely violates both the letter and the spirit of the aforementioned instruments, particularly where many of the actual "articles" and sources themselves appear questionable, and perhaps unsubstantiated. *See, e.g.*, 9/11 Entry, linking to "Rense.com," (containing what appears to be a series of "anonymous questions" posted by some obscure entity known as the "American Patriot Friends Network.") Given the dubious nature of such sources, reproducing or linking to them, and inserting subtitles or headings that purport to describe them, particularly when viewed against the parties' history and the backdrop of the other materials on the subject blog (as in the right handed column), all provide a basis to move on contempt on behalf or against Mr. Dahdah for contempt of this Court's orders.

## ARGUMENT

"Acts of willful disobedience to clear and unambiguous orders of the court constitute contempt of court." *In re Weiss*, 703 F.2d 653, 660 (2d Cir. 1983). Such disobedience may be treated as either civil contempt, as criminal contempt, or both. *Id.* ("Many forms of disobedience may be dealt with either as acts of civil contempt, or as acts of criminal contempt, or as both."); *United States v. United Mine Workers*, 330 U.S. 258, 299, 91 L. Ed.

884, 67 S.Ct. 677 (1947) (holding that same "conduct can amount to both civil and criminal contempt"); *see also* 27 Moore's Federal Practice 3d, § 642.03[1] (criminal contempt is not limited to conduct in a criminal case, but may also arise out of civil proceedings).

Both civil and criminal contempt remedies are available for a violation of an order of this Court:

> When an injunction has been violated, civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority.

*Universal City Studios, Inc. v. N.Y. Broadway International Corp.*, 805 F.2d 94 (2d Cir. 1983).

To find an alleged contemnor in civil contempt, a three-pronged test must be satisfied:

(1) Failure to comply with a clear and unambiguous order of the court;

(2) Proof of the noncompliance is clear and convincing; and

(3) The alleged contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered.

*EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir. 1991). Willfulness is not an element of civil contempt. *See Bseirani v. Mashie*, 107 F.3d 2 (2d Cir. 1997).

Dahdah's misconduct satisfies this test. Dahdah's using and registering of the name "khourysucks.com," on which he suggests wrongdoing by Consolidated Contractors and the Khoury family, violated the letter and spirit of the settlement agreement and consent judgment, which prohibited him from using or registering domain names containing, and from publishing defamatory statements about, Morganti, its parent or related companies, or anyone related

thereto. Additionally, Dahdah violated the order by including on his website a hyperlink to Consolidated Contractors' website. In engaging in this misconduct, Dahdah was certainly not reasonably diligent and energetic in attempting to accomplish what was ordered; otherwise, Dahdah would not have blatantly ignored the terms of the consent order in the fashion that it did. In fact his letter of December 15, 2001 (Exhibit E to the Costas affidavit) establishes his contempt of this Court and its order. Accordingly, an order of contempt is necessary to provide Plaintiffs relief from Defendant's unconscionable disregard of this Court's orders.

## CONCLUSION

Wherefore, for the foregoing reasons, plaintiffs respectfully request that its Motion to Find Bandali F. Dahdah to be in Contempt be granted, and that this Court enter an order:

1. Adjudging Dahdah and any persons acting in concert with him to be in contempt of this Court's order;

2. Prohibiting Dahdah from other violations of this Court's August 27, 2001 judgment and order that of July 1, 2002, under penalty of criminal contempt;

3. Requiring Dahdah to pay damages for his contempt; and

4. Granting such other and further relief, including assessment of attorney's fees and costs, as this Court may deem just and proper.

Dated: FEB 15, 2008

THE MORGANTI GROUP, INC.
THEODORE CATINO

By: _____
Peter L. Costas  ct04260
Louis R. Pepe  ct04319
PEPE & HAZARD LLP
225 Asylum Street
Hartford, CT  06103
(860) 241-2630